UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>SALEM CAPITAL GROUP, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 07-19825<br><br>Honorable John H. Squires<br><br><br>Hearing Date: March 24, 2008<br>Hearing Time: 9:30 a.m. |

**FINAL ORDER AUTHORIZING DEBTOR TO OBTAIN
POSTPETITION FINANCING WITH PRIORITY OVER ADMINISTRATIVE
EXPENSES AND SECURED BY LIENS ON PROPERTY OF THE ESTATE
PURSUANT TO SECTION 364(c) OF THE BANKRUPTCY CODE**

Upon the motion (the "Motion") of Salem Capital Group, Inc. , as debtor and debtor-in-possession (the "Debtor"), for the entry of an Final order (this "Final Order"), pursuant to section 364(c) of title 11 of the United States Code (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014, authorizing it to obtain post-petition financing by entering into a certain Post-Petition Senior Secured Loan Agreement attached hereto as Exhibit A (the "Loan Agreement" that is incorporated herein by reference and made a part hereto)[1] with the Lauralee K. Bell 1993 Trust (the "1993 Trust"), subject to the terms and conditions set forth herein and therein, with such financing to have priority over administrative expenses and secured by liens on property of the Debtor's estate (the "DIP Financing"), all as more fully set forth herein, and upon the proceedings held before this Court on March 6, 2008 and March 24, 2008 including the representations of the counsel for the Debtor and the 1993 Trust, good and sufficient cause appearing therefore,

---

[1] All capitalized terms used herein, but not otherwise defined shall be given the meaning ascribed to them in the Loan Agreement, and in the event of any inconsistency, the terms in the Loan Agreement shall control.

{6341 ORD A0201618.DOC}

BASED UPON THE MOTION, THE COURT HAVING BEEN ADVISED AT THE HEARING THAT THE DEBTOR AND THE 1993 TRUST AGREE TO THE GRANTING OF THE RELIEF PROVIDED IN THIS FINAL ORDER, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.   On October 25, 2007 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is possession of its assets and managing its business as a debtor-in-possession within the meaning of section 1101(1) of the Bankruptcy Code.  There is presently no pending request or motion for appointment of a trustee (other than the Motion for Appointment of Trustee filed by the 1993 Trust) or an examiner and no official committee has been appointed in this chapter 11 case (the "Chapter 11 Case").

B.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. § 1408.

C.   The Debtor is a provider of financial services to public and private entities relating to municipal bonds.  The Debtor ceased the majority of its business operations in late 2006 but continues to operate in a limited capacity in connection with the continued operations of affiliated entities.

D.   An immediate and ongoing need exists for the Debtor to obtain funds to enable the Debtor to, among other things, formulate and confirm a liquidating plan, prepare tax returns, complete accounting tasks, and participate in the litigation brought by or on behalf of Scott Co. which is the collateral of, and subject to the security interests of the Debtor, including, without limitation, the action entitled *Scott Co. of California v. Venetian Casino Resort, et al.*, Case No.

{6341 ORD A0201618.DOC}

2

A409223, pending before the District Court of Clark County, Nevada. The entry of this Final Order will enhance the possibility of a successful liquidation.

E.   The Debtor cannot adequately preserve the most valuable assets of its bankruptcy estate and complete the successful liquidation of its assets using only its unencumbered cash. Without the DIP Financing, the Debtor will be unable to efficiently and effectively preserve its assets, liquidate its business, pay its employees, and meet its other direct operating expenses associated with the preservation of its assets pending the ultimate liquidation of its business. Without the DIP Financing, the likelihood that the Debtor will be able to realize the full liquidation value of its assets for the benefit of its creditors will be significantly reduced, if not altogether eliminated.

F.   Absent entry of this Final Order to provide funding for the budgeted expenses, the Debtor's bankruptcy estate will suffer immediate and irreparable harm, as the Debtor may forever lose its ability to (1) preserve and realize the benefits of the global settlement set forth in the Term Sheet attached as Schedule 1 to the Loan Agreement, (2) preserve the value of the Scott litigation, and (3) maximize the value of its assets for the benefit of its creditors.

G.   In light of the Debtor's current financial condition and capital structure, the Debtor is unable to obtain adequate unsecured credit allowable under section 503(b)(1) merely as an administrative expense pursuant to section 364(b). The 1993 Trust has committed to provide loans in an aggregate principal amount of up to eighty-eight thousand dollars ($88,000.00) to the Debtor, subject to, *inter alia*, the terms and conditions described herein and in the Loan Agreement.

H.   The 1993 Trust's willingness to provide the DIP Financing is conditioned upon: (1) the entry of this Final Order authorizing continued borrowing by the Debtor on terms and

conditions set forth in the Loan Agreement; (2) the execution of the Loan Agreement by all parties thereto; (3) the Court granting the 1993 Trust (a) a superpriority administrative expense status under section 364(c)(1), with priority over all costs and expenses of administration of the cases incurred under any section of the Bankruptcy Code, subject, as to priority, only to the 1993 Trust's obligation to advance funds to the Debtor in order to satisfy the Permitted Fee Expenses (including fees payable pursuant to 28 U.S.C. § 1930(a)(6)) up to the Carve-Out (each capitalized term as defined and discussed below), and (b) a perfected, first-priority lien on all of the Debtor's assets under section 364(c)(2), subject again, to the Carve-Out; and (4) satisfaction of all other conditions set forth in the Loan Agreement. The authority provided to the Debtor in this Final Order and the obligations of the 1993 Trust with respect to the DIP Financing are limited solely to the DIP Financing and adequate protection as set forth herein.

I. The Debtor believes that the terms of the DIP Financing, taken as a whole, are more favorable to the Debtor than those available from alternative sources. Moreover, the Debtor is not aware of any alternative sources given the Debtor's current financial condition, capital structure and limited revenue generating capabilities. Indeed, the DIP Financing is only available because of its integral role with the other components of the Term Sheet. The terms of the DIP Financing, as more particularly set forth in the attached Loan Agreement, have been negotiated in good faith and at arm's length between the Debtor, the 1993 Trust and other parties to the Term Sheet, and are fair and reasonable under the circumstances.[2]

J. The 1993 Trust has indicated a willingness to enter into the financing arrangements contemplated by this Final Order and the Motion, all subject to the conditions set forth herein and the provisions of this Final Order assuring that the Post-Petition Liens and the

---

[2] The agreement represented by the Term Sheet will be incorporated into the Debtor's Plan of Liquidation.

{6341 ORD A0201618.DOC}

various claims, superpriority claims and other protections granted pursuant to this Final Order will not be affected by any subsequent reversal or modification of this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated by this Final Order. The 1993 Trust has acted in good faith in consenting to and in agreeing to provide the post-petition financing contemplated by this Final Order. The reliance of the 1993 Trust on the assurances referred to above is in good faith.

K.  Notice of the Hearing on the Motion and this Final Order has been provided to counsel to the 1993 Trust, the United States Trustee and the unsecured creditors of the Debtor. In view of the relief requested, such notice constitutes sufficient notice in accordance with the provisions of section 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014, and any other applicable law, and no other notice need be given.

L.  Good cause has been shown for the entry of this Final Order. The Court's entry of the Final Order is in the best interests of the Debtor, its creditors and its estate, and is necessary for the efficient and effective preservation and ultimate liquidation of the Debtor's business and to prevent immediate and irreparable harm.

M.  The financing and adequate protection arrangements authorized hereunder have been negotiated in good faith and at arm's length among the Debtor and the 1993 Trust. The terms of such financing and adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration. As such, the Debtor and the 1993 Trust are entitled to the protections provided by section 364(e) of the Bankruptcy Code.

BASED UPON THE FOREGOING FINDINGS AND STIPULATIONS, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1. The Motion is granted and the Debtor is hereby authorized to (a) enter into the Loan Agreement and (b) enter into all agreements, documents and instruments delivered pursuant hereto or thereto, which Loan Agreement shall be in substantially the form annexed to this Order. The Debtor is hereby authorized to borrow money (the "Loan") pursuant to the terms of this Final Order and the provisions of the Loan Agreement and perform its obligations hereunder and thereunder, solely in accordance with, and subject to, the terms of this Final Order, in compliance with and for the purposes of funding those expenses set forth in the budget attached hereto as Exhibit B (as may be supplemented from time to time, the "Budget"). The Debtor shall be authorized to borrow funds pursuant to this Final Order in the amounts set forth in the Budget (taking into account the "Permitted Variance" as defined in the Loan Agreement) subject to the terms and conditions set forth in the Loan Agreement. The Debtor further is authorized to enter into such non-material modifications and amendments to the Loan Agreement without further Court order as may be agreed upon in writing by the Debtor and the 1993 Trust, except any modification of the amount, rate or maturity of the DIP Financing. Upon execution and delivery of the Loan Agreement, the Loan Agreement shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with its terms. Notwithstanding any other provision of this Final Order, the 1993 Trust shall not have any obligations or commitments under the Loan Agreement or this Final Order until the conditions precedent provided for in the Loan Agreement have been satisfied.

2. As security for the Loan, the 1993 Trust is hereby granted valid, binding, enforceable and perfected liens (the "Post-Petition Liens") in all currently-owned or hereafter-

acquired property and assets of the Debtor and its estate as created under section 541 of the Bankruptcy Code (collectively, the "Post-Petition Collateral"), subject only to the Carve-Out and any liens or security interests existing on or in the Post-Petition Collateral that are valid, binding, enforceable, and perfected liens on the Petition Date that are not otherwise subject to avoidance or subordination.[3] For purposes of this Final Order, "proceeds" of any Post-Petition Collateral shall mean proceeds (as defined in the Uniform Commercial Code) of such collateral as well as: (a) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to such Post-Petition Collateral; (b) any and all payments (in any form whatsoever) made or due and payable to the Debtor in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of such Post-Petition Collateral by any governmental body, authority, bureau or agency (or any person under color of governmental authority); and (c) other payments, dividends, interest or other distributions on or in respect of any of such Post-Petition Collateral.

3.   In addition, (a) the Post-Petition Loans shall have priority in accordance with the provisions of section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), or 726 of the Bankruptcy Code ("Superpriority"), subject only to the Carve Out. Except for the Carve-Out, no costs or administrative expenses that have been or may be incurred in the Debtor's Chapter 11 Case, in any conversion of the Debtor's Chapter 11 Case to a proceeding pursuant to Chapter 7 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other Superpriority claims, are or will be prior to or on a parity with the claims of the 1993 Trust against the Debtor arising out of the Loan or any

---

[3] Neither the Debtor nor the 1993 Trust believe any such liens exist.

{6341 ORD A0201618.DOC}

provision of this Final Order or with the liens and security interests granted herein on, in and to the Post-Petition Collateral. Except as expressly set forth in this Final Order, the Post-Petition Liens shall not be: (i) subject to any lien which is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code; or (ii) subordinated to or made *pari passu* with any other lien under Section 364(d) of the Bankruptcy Code or otherwise.

4.  The Debtor's entry into, and compliance with the Loan Agreement attached hereto as **Exhibit A** and the terms thereof is hereby approved, including, which Loan Agreement includes the material terms set forth above and immediately below:

   a.  Loan Amount. The 1993 Trust will make the DIP Financing available to the Debtor under the Loan Agreement up to the aggregate principal amount of $88,000.00 (the "Loan Amount"). Each advance made by the 1993 Trust under the Loan Documents shall constitute a Loan and shall be evidenced by a promissory note made payable to the 1993 Trust. The 1993 Trust shall be entitled to condition any Loan advances after the twenty-day (20) period immediately proceeding the date hereof on the Court having entered the Final Order.

   b.  Borrowing Conditions. The 1993 Trust must honor each loan request provided that (i) honoring the request would not cause the aggregate amount of outstanding Loans to exceed the Loan Amount; (ii) no Event of Default has not occurred and is continuing; and (iii) the Loans advanced are used solely for the expenses and items set forth in the Budget, subject to the Permitted Variance.

   c.  Interest. Each Loan shall accrue interest at a rate of 8% per annum, except upon the occurrence and continuation of an Event of Default in which event

interest on the Loans shall accrue at a rate of 9.5% per annum. All accrued and unpaid interest is due and payable on the Maturity Date or upon acceleration.

d.  <u>Maturity</u>. The Loans shall mature upon (1) the earliest of the following: (a) June 1, 2009; (b) the date on which there are sufficient cash proceeds in the Liquidating Trust to satisfy the Bell Trust Post-Petition Secured Claim (as such terms are defined in the Term Sheet); or (c) the date of acceleration of the Obligations upon the occurrence of an Event of Default; or (2) such other date as agreed to in writing by the 1993 Trust and the Debtor (or its successor in interest). The Loans shall mature, and the principal amount of all outstanding Loans, together with all accrued and unpaid interest thereon and all other Obligations that may be due to the 1993 Trust under the Loan Agreement, shall be immediately due and payable from the assets of the Debtor or the proceeds of the disposition thereof by the Debtor to the 1993 Trust upon the Maturity Date.

e.  <u>Events of Default</u>. Each of the following constitute an "Event of Default" under the Loan Agreement:

(1)  The Debtor fails to pay any Obligations when due;

(2)  The Debtor breaches, defaults, or fails or neglects to perform, keep or observe any covenant or provision of the Loan Agreement or any other Post-Petition Loan Agreement, and the same shall remain unremedied or unwaived for a period ending on the first to occur of (i) three (3) Business Days after the Debtor receives written notice from the 1993 Trust or (ii) ten (10) days after the Debtor first becomes aware thereof;

(3)  The Debtor's expenses for any particular Budget Month exceed by more than 10% the amount set forth in the Budget (i.e., the "Permitted Variance");

(4)  Any party to the Term Sheet (other than the Lender) breaches, defaults, or fails or neglects to perform, keep or observe any covenant or provision thereof;

(5) Any material inaccuracy of any representation, warranty, certification or statement made by the Debtor in the Loan Agreements, any other Post-Petition Loan Agreement, or any document to which the Debtor and the 1993 Trust are parties or by the Debtor in any certificate, financial statement or other document delivered pursuant the Loan Agreements;

(6) The Loan Agreements shall cease to be effective to grant a perfected security interest in the Post-Petition Collateral with the priority stated to be created thereby or such security interest shall cease to be in full force and effect or shall be declared null or void, or the validity or enforceability of such security interest or the Loan Agreement shall be contested by the Debtor;

(7) The Debtor or any party to the Term Sheet challenges or disputes in any manner, the nature, extent or validity of the 1993 Trust's security interest;

(8) The Debtor breaches or violates any term of this or the Final Order;

(9) The Debtor's Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code, or a Chapter 11 trustee is appointed;

(10) The Debtor fails to file the Liquidating Plan (as defined in the Term Sheet) and accompanying disclosure statement on or before March 31, 2008, or the Bankruptcy Court does not enter an order confirming the Liquidating Plan on or before May 31, 2008; and

(11) The Debtor files a Chapter 11 plan that is inconsistent with, or does not contain all of the terms and conditions for the Liquidating Plan set forth in the Term Sheet, including, without limitation, the terms and conditions set forth in Sections 5(a) through (h) of the Term Sheet.

Notwithstanding the occurrence of an Event of Default or anything herein to the contrary, all of the rights, remedies, benefits and protections provided the 1993 Trust under this Final Order shall survive the occurrence of an Event of Default. Upon the occurrence and during the continuation of an Event of Default, the 1993 Trust may, without notice, (a) terminate the Loan Agreement, whereupon all outstanding Obligations will be immediately due and payable, and (b) exercise any and all rights and remedies provided under the Loan Agreement and the Post-Petition Loan Documents. Notwithstanding the occurrence of an Event of Default

or anything in the Loan Agreement to the contrary, the 1993 Trust may elect, in writing, to not terminate the Debtor's authority to borrow funds under the Loan Agreement, to waive defaults or Events of Default under the Loan Agreement, to forbear from the exercise of rights and remedies hereunder and under the Loan Agreement, and, subject to Court approval, to modify the Events of Default described herein. Any such continued extension of financial accommodations shall be without prejudice to the 1993 Trust's ability to terminate funding and shall not constitute a course of dealing obligating the 1993 Trust to make further financial accommodations available to the Debtor.

f.  <u>Stay Modification</u>. Immediately and automatically upon the entry of the Final Order, all stays and injunctions in the Chapter 11 Case, including, but not limited to, the automatic stay arising on the Petition Date under Section 362(a) of the Bankruptcy Code, will be terminated automatically and irrevocably as to the 1993 Trust and with respect to the enforcement of its remedies against the Post-Petition Collateral under the Loan Agreements and any of the other Post-Petition Loan Agreements upon the occurrence and during the continuation of a Default or Event of Default, subject to the Debtor's limited right to challenge the occurrence of a Default or Event of Default.

g.  <u>Foreclosure/Enforcement of Lien</u>. Upon the later of (1) the expiration of the five (5) business day period referenced above or (2) the conclusion of the Default Hearing, if any, and unless the Bankruptcy Court finds that no Default or Event of Default has occurred or is continuing, the 1993 Trust shall be irrevocably appointed, with full power of substitution, as the Debtor's true and lawful

attorney-in-fact with full irrevocable power and authority in the place and stead of such Debtor and in the name of such Debtor or in the 1993 Trust's own name, to take any and all appropriate actions and to execute any and all documents, instruments, and court filings which may be necessary or desirable to liquidate or collect the Post-Petition Collateral or otherwise accomplish the purposes of this Agreement.

h. <u>Credit</u>. The Debtor may not incur any other indebtedness under sections 364(b), (c) or (d) of the Bankruptcy Code.

i. <u>Indemnities</u>. The Debtor must indemnify and hold the 1993 Trust harmless from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities, and expenses (including, without limitation, reasonable attorneys' fees and disbursements, including those incurred upon any appeal) which may be instituted or asserted against or incurred by the 1993 Trust as the result of its having entered into the Loan Agreement or any of the Post-Petition Loan Documents or having extended credit thereunder, excluding any such suits, actions, proceedings, claims, damages, losses, liabilities, or expenses arising from the gross negligence or willful misconduct of the 1993 Trust. The Borrower must also indemnify the 1993 Trust for the full amount of Taxes and Other Taxes (including, without limitation, any Taxes or Other Taxes imposed by any jurisdiction on amounts payable under Section 2.8 of the Loan Agreement) paid by the 1993 Trust and any liability (including penalties, interest and expenses) arising therefrom or with respect thereto, whether or not such Taxes or Other Taxes were correctly or legally asserted.

5. The Debtor shall execute and deliver to the 1993 Trust all such agreements, financing statements, instruments and other documents as the 1993 Trust may reasonably request to evidence, confirm, validate or perfect the liens and security interests granted pursuant hereto. Without limiting the rights of access and information afforded the 1993 Trust under the Loan Agreement, the Debtor shall have reasonable access upon reasonable notice to its accounting information and records during normal business hours (without unreasonable interference with the proper operation of the Debtor's business and facilities) and provide all non-privileged information as the 1993 Trust may reasonably request.

6. The Post-Petition Liens and all other liens and security interests granted herein shall, pursuant to this Final Order, be, and they hereby are, deemed perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if the 1993 Trust shall, in its sole discretion, choose to file such financing statements, notices of liens and security interests and other similar documents, all such financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Final Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby vacated to effect such filings. Except as otherwise permitted by the Loan Agreement, the Debtor shall be enjoined and prohibited from, at any time during the Chapter 11 Case, granting liens in the Post-Petition Collateral or in any portion thereof to any other parties pursuant to Section 364 of the Bankruptcy Code or otherwise, which liens are senior or on a parity with the Post-Petition Liens. The obligations of the Debtor in respect of the Loan shall not be discharged by the entry of an order confirming a plan of reorganization in this case and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived such discharge.

7. In making decisions to advance moneys or extend financial accommodations of any nature under this Final Order or any advances, loans, or financial accommodations of any sort under this Final Order, or in taking any other action related to or in connection with any of the foregoing, the 1993 Trust shall have no liability to any third party, and shall not be deemed to be in control of the operations of the Debtor, an "employer" of any of the Debtor's employees, or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtor. No consent by the 1993 Trust to any administrative claims, including payments to the Debtor's professionals pursuant to the Budget, sought to be assessed against or attributed to the 1993 Trust or the Post-Petition Collateral pursuant to the provisions of Section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtor, shall be implied from any action, inaction or acquiescence by the 1993 Trust or otherwise.

8. The provisions of this Final Order shall be binding upon and inure to the benefit of the 1993 Trust, the Debtor and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor).

9. Based on the findings set forth in paragraphs I and L of this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any lien, security interest or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the 1993 Trust hereunder arising prior to the effective date of such modification, amendment or vacation

shall be governed in all respects by the original provisions of this Final Order, and the Prepetition Lender or the 1993 Trust, as the case may be, shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

10. The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, mortgages and financing statements) and to pay fees and expenses that may be required or necessary for the Debtor's performance hereunder.

11. The Debtors shall be permitted to pay compensation and reimbursement of expenses to professional persons employed under Sections 327 or 1103 of the Bankruptcy Code, as the same may be due and payable, to the extent such expenses are Permitted Fee Expenses. As used in this Final Order, "Permitted Fee Expenses" refers to the payment of the following permitted fees and expenses: (a) the unpaid fees of the clerk of the Court and of the United States Trustee pursuant to 28 U.S.C. § 1930 and (b) the outstanding fees and expenses of the Debtor's professionals through and including the applicable Maturity Date, pursuant to and in accordance with the Budget, which shall not exceed $75,000.00 in the aggregate ("Carve Out"), when such Permitted Fees Expenses are allowed to be paid by a final order of this Court under Sections 330 and 331 of the Bankruptcy Code. The 1993 Trust shall advance funds to the Borrower to satisfy the Permitted Fee Expenses up to the Carve-Out through and including the Maturity Date regardless of (i) the timing of the entry of such Final Order or (ii) the status of the Loan at that time, provided, however, that the fees and expenses of the Debtor's professionals incurred after the Maturity Date shall not constitute Permitted Fee Expenses and the 1993 Trust

shall have no obligation to loan funds to or otherwise pay any fees and expenses of the Debtor's professionals incurred after the Maturity Date.

12. This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. There is no just reason to delay enforcement or appeal of this Final Order. This Court shall retain jurisdiction to hear any and all issues or disputes relating to or arising under the Motion or this Final Order.

Dated: March ____, 2008

ENTERED:

_____
UNITED STATES BANKRUPTCY JUDGE

Order prepared by:

Brian L. Shaw
Shaw Gussis Fishman Glantz
  Wolfson & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL 60610
Tel: (312) 541-0151
Fax: (312) 980-3888
email: bshaw100@shawgussis.com

{6341 ORD A0201618.DOC}